IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JUDY K. CODY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-3484-CV-W-HFS |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I.     Procedural Background

On August 31, 2001, plaintiff applied for disability insurance benefits under Title II of the

Social Security Act, 42 U.S.C. §§ 401, et seq. (Tr. 90-92). She alleged a disability onset date of April

1, 1995, and alleged impairments due to neck injury and Post Traumatic Stress Disorder ("PTSD");

by letter dated November 6, 2001, her application was denied. (Tr. 62-65).

On April 22, 2002, plaintiff filed another application for disability benefits, alleging a

disability onset date of March 19, 2001. (Tr. 102-04). By letter dated May 17, 2002, plaintiff's

application was denied[1]. (Tr. 69-72). Plaintiff timely requested a hearing. (Tr. 73-74). A hearing was

held on April 2, 2004, and by a decision dated July 19, 2004, the Administrative Law Judge ("ALJ")

found that plaintiff suffered from a multitude of impairments including degenerative disc disease;

---

[1]Plaintiff's claim, based on the same issues previously presented, was denied because it
was decided that she was not disabled, "within the meaning of the law," at any time on or before
June 30, 2001, the date of last insured. (Tr. 69).

mild degenerative joint disease in the lumbar and cervical spines; PTSD from sexual assault and harassment while in the Navy; dysthymia/depression; and polysubstance abuse of crystal methamphetamines, marijuana and cocaine, in remission since 1994, and sporadic alcohol use as late as 1999. (Tr. 21). Although the ALJ found these impairments to be severe, she concluded that plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work as an aircraft mechanic, as well as other work that existed in significant numbers in the national economy. (Tr. 22). For the reasons set forth herein, the decision of the ALJ will be affirmed.

## II. **Factual Background**

The facts as set forth in the parties' briefs are sufficient, and will therefore, be merely summarized here.

At the outset of the hearing, plaintiff's attorney advised the ALJ that plaintiff was not alleging that her impairments met or equaled a listing. (Tr. 26). Counsel also stipulated to an RFC of sedentary regarding plaintiff's physical impairments, and claimed mental impairments. (Id). Counsel also stated that there were no allegations of impairments regarding plaintiff's back, knees, or hips to preclude work activity. (Id). Counsel advised the ALJ of plaintiff's 100% disability determined by the Veteran's Administration ("V.A."). (Tr. 26-27).

### Plaintiff's Testimony

At the time of the hearing plaintiff resided with her three children aged 6, 6, and 5. (Tr. 28-29). She completed high school and attended some college. (Tr. 29). In 1996 and 1997, plaintiff tutored students in biology and microbiology, while she took courses in radiation therapy. (Id).

2

Plaintiff worked as a daycare provider in 2001, but stopped when she began having flashbacks and nightmares, and could not sleep. (Tr. 30-31). Plaintiff received psychiatric treatment from the V.A. in April of 2001, but did not receive further treatment until October of 2002.(Tr. 31). Plaintiff explained that the lapse in treatment occurred because she moved and lived 75 miles from the nearest V.A. facility. (Id). The medication received made plaintiff drowsy and impeded the care of her children, but if she does not take the medication she is subject to angry outbursts, panic attacks, and mood swings. (Tr. 32). Plaintiff has pain in her lower back and right knee. (Tr. 36). She was pursuing disability for the knee, but the V.A. rendered her 100% disabled due to PTSD. (Id).

When questioned by her attorney, plaintiff explained that as a daycare provider she only took care of one extra child, usually on a part time basis. (Tr. 38-39). From March of 2001, through the present, plaintiff experiences intrusive recollections 2 to 4 times a week. (Tr. 40). During these periods, plaintiff is distrustful of everyone, and has called the police 3 to 4 times due to a fear that someone was outside her home. (Tr. 40). Plaintiff remains at home with her children, she does not socialize with friends or family. (Tr. 40-41). Plaintiff goes through periods of insomnia, followed by periods of constant sleepiness. (Tr. 41). Sometimes plaintiff experiences mania where she feels as though she is walking on a cloud, and her mind is racing. (Tr. 42). Plaintiff takes medication sporadically. (Tr. 42-43). Plaintiff testified that if she were given the opportunity to work at a job that placed low physical and mental demands on her, the greatest obstacle would be in developing a relationship with her employer. (Tr. 44).


Vocational Expert Testimony

3

The vocational expert described plaintiff's past work as a daycare provider as light and unskilled, and her work as a tutor, sedentary and skilled. (Tr. 45). Plaintiff's work as a dispatcher would be sedentary, semi skilled work; her work as a customer service representative would be sedentary, semi skilled; and her work as a minimum security prison guard and aircraft mechanic while in the Navy would be medium, semi skilled. (Tr. 46). All of these jobs, with the exception of aircraft mechanic, required working with people. (Tr. 47).

The vocational expert was asked to assume a hypothetical person of plaintiff's age, education, and work experience who had the RFC to perform medium and light work, no work with the public, and low contact with supervisors and co-workers. (Tr. 48). The vocational expert testified that such an individual could perform other work. (Id).

The vocational expert testified that other jobs in the medium exertional category would include machine feeder, of which there were 5,700 jobs in Missouri and 335,000 nationally. (Tr. 49). Also, order picker or order filler of which there were 24,000 jobs in Missouri, and 190,000 nationally. (Id). As to the light category, the vocational expert testified that there were 300 jobs for a grinding machine operator in Missouri, and 20,200 nationally. (Id). Also in that category, there were 300 jobs in Missouri for a microfilm mounter, and 12,500 jobs nationally. (Id). Additional jobs in the light category included packaging machine operator of which there were 1,200 jobs in Missouri, and 38,000 nationally. (Id).

The vocational expert explained that all of the jobs were unskilled and did not require the performance of anything more than simple repetitive tasks. (Tr. 50). Generally, an employee of these jobs could be absent from work 10 to 12 days a year. (Id).

4

When questioned by counsel, the vocational expert testified that if a person had a low exposure to other people walking in and about the building, in addition to supervisors or co-workers, all work would be precluded. (Tr. 51-52). Counsel noted that although plaintiff had the capacity to interact intellectually, exposure to groups or strangers caused distress. (Tr. 52). Counsel stated that a moderate restriction on activities of daily living and social functioning equated to 1/3 of the day. (Id). The vocational expert opined that a moderate restriction in persistence and pace would preclude any work activity. (Tr. 52-53).

In his closing statement, counsel stated his opinion that the records reflected moderate deficiencies of concentration, persistence, and pace; that plaintiff has been consistently described as 100% disabled since March of 2001; and that she has received significant medications. (Tr. 53). Nevertheless, counsel agreed that he would have preferred to have a better treatment record. (Tr. 53). Counsel further noted that plaintiff experienced 2 to 4 intrusive recollections per week which were the foundation of the PTSD, and opined that exposure to a work environment would increase these episodes. (Id).

The ALJ then noted that there was no legal definition for moderate in the Social Security Administration, and asked counsel to cite his authority that moderate equals 1/3 of the day. (Tr. 54). Counsel noted that the RFC form used by Social Security defined moderate as limited but adequate. (Id). The ALJ also noted that plaintiff's highest GAF score was 51, and although it was previously recorded to be 40 and 45, a medical record dated April of 2001, noted that plaintiff's hypomania improved with medication and was mild. (Tr. 55). After that date, plaintiff received no psychiatric treatment for 18 months. (Tr. 55-56). Counsel explained that Dr. Clark was asked to submit a medical source statement, but given plaintiff's relationship to the V.A., it was declined. (Tr. 56).

5

Counsel asked that the ALJ give sufficient weight to the disability determination of the V.A. (Tr. 56). Counsel agreed, however, that plaintiff's manic symptoms subsided with medication, but argued that her depression and PTSD continued. (Tr. 57). The ALJ stated her concern that the March 2001, record noted that plaintiff presented to the V.A. after a long absence complaining of feeling high, she was given medication, in April of 2001, the hypomania was mild, and then there were no medical records for 18 months. (Tr. 57). Plaintiff also expressed concern about the lapse in time, and stated that during that period she spoke with Dr. Rink by phone. (Id). Moreover, Dr. Rink continued to prescribe medication during that time, and blood tests were required in order to ensure the correct dosage was prescribed. (Tr. 57-58).

### III.  **Standard of Review**

Judicial review of the ALJ's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. Marsh v. Apfel, 23 F.Supp.2d 1073, 1075 (D.Minn. 1998). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. Marsh, at 1075. Where such evidence exists, a court is required to affirm the ALJ's factual findings. Id.

However, the court's review is not simply : a rubber stamp for the [Commissioner's] decision and involves more than a search for evidence supporting the [Commissioner's] findings." Sanchez-Wentz v. Barnhart, 216 F.Supp.2d 967, 972 (D.Neb. 2002). In determining whether substantial evidence exists, the court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. Sanchez-Wentz, at 972. In addition, the court's review of the decision must include a determination as to whether the proper legal standards were applied. Id.

6

## IV.    Analysis

Plaintiff contends that the ALJ erred in two respects. First, plaintiff claims that the ALJ failed to properly determine her RFC by failing to consider the opinion of her treating physician and the determination of the V.A. that she is 100% disabled. Second, the ALJ failed to determine the physical and mental demands of her past work as an aircraft mechanic and compare it to her RFC.

Preliminarily, it is noted that in order to receive disability insurance benefits, an applicant must establish that she is disabled before the expiration of her insured status. Meinders v. Barnhart, 195 F.Supp.2d 1136, 1142 (S.D.Iowa 2002); see also, Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998). The relevant period here is from the alleged onset date of disability, March 19, 2001, through plaintiff's last insured date, June 30, 2001.

A claimant's RFC is what he or she can do despite his or her limitations. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); 20 C.F.R. § 404.1545. Although it is the claimant's burden to prove his RFC, it is the ALJ's responsibility to determine a claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations. Pearsall, at 1217. Before determining a claimant's RFC, the ALJ must evaluate the claimant's credibility by considering the objective medical evidence; claimant's daily activities; the duration, frequency, and intensity of pain; the dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. Id.; citing, Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

The medical evidence reveals that on July 17, 2000, plaintiff called Dr. William E. Rinck, her treating physician at the time, and complained of having severe problems with PTSD nightmares and depression. (Tr. 249). Dr. Rinck noted his discussion with plaintiff regarding Sertraline, a

7

medication for depression, and his decision to send it to her due to her distance from the hospital. (Id). He also noted plaintiff's GAF score of 45 which was previously determined on September 29, 1999. (Id). On March 19, 2001, plaintiff presented to the V.A. complaining of intrusive recollections, distrust of everyone, and feelings of mania. (Tr. 18, 238). She was prescribed Depakote, and warned of getting pregnant while taking this medication. (Id). On April 13, 2001, plaintiff continued to complain of racing thoughts and insomnia, and she was diagnosed with PTSD and mild hypomania. (Id). Although plaintiff continued to receive treatment from the V.A., it was for problems with urination, dental problems, and influenza. (Tr. 234-36). She did not seek treatment for a mental condition until October 30, 2002, well over a year since her prior visit on April 13, 2001.

During the hearing, plaintiff explained that the lapse in mental treatment was due to her distance from the hospital, i.e. 70 miles. (Tr. 18). Yet, plaintiff was able to drive to the hospital for the other aforementioned complaints during this time; thus, the ALJ found her testimony only partially credible. (Id). The ALJ also found plaintiff's testimony to be only partially credible because despite her allegations of pain, she was able to perform work in a day care service. (Tr. 19). However, plaintiff's testimony clarified that rather than a full service day care facility, she simply watched a neighbor's child for a few hours a day. There does seem to be an inconsistency between caring for plaintiff's own 3 children, still relatively young, and her allegations of disabling pain.

As noted above, plaintiff complains that the ALJ failed to give proper weight to her treating physician, Dr. G. Clark. Generally, the opinion of a treating physician is entitled to substantial weight; however, it is not conclusive in determining disability status and must be supported by acceptable clinical or diagnostic data. Rhodes v. Apfel, 40 F.Supp.2d 1108, 1119 (E.D.Mo. 1999). A treating physician's opinion "does not automatically control, since the record must be evaluated

8

as a whole," and it should not be inconsistent with other substantial evidence on the record as a whole. Rhodes, at 1119; quoting, Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995).

According to the medical records, Dr. Clark began treating plaintiff on October 30, 2002, and his notes indicate that plaintiff's first began treatment in 1993, for 3 to 6 times a year, receiving medications and psychotherapy. (Tr. 235). He noted that plaintiff experienced intrusive thoughts, nightmares, flashbacks, and mood swings, and diagnosed her with PTSD. (Id). He opined that plaintiff was not capable of performing her past work or any work, and noted her current medications consisting of Clonazepam, Divaproex, and Risperidone. (Id). The ALJ found the opinion to be conclusory and without detail. (Tr. 18). I agree, in fact, Dr. Clark admits as much in his notes where he states that he has not followed plaintiff, and relied on his review of notes and plaintiff's statements. (Tr. 233). In his notes of September 24, 2003, Dr. Clark states that he has followed plaintiff since October 30, 2002, and that she is vocationally and socially disabled secondary to her mental illness, severe PTSD, and bipolar disorder. (Tr. 333). This, however, is a conclusory opinion without the necessary clinical and/or diagnostic data required in the diagnoses of treating physicians. Moreover, the opinion that a claimant cannot work is a decision to be made solely by the ALJ. Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) (statements that a claimant is unable to work is an opinion on the application of the statute which is a task assigned solely to the Commissioner).

Plaintiff also claims the ALJ simply dismissed the determination of the V.A. that she was 100% disabled. It has been held that a disability determination by the V.A. is not binding on an ALJ considering a Social Security applicant's claim for disability benefits. Pelkey v. Barnhart, 433 F.3d 575 (8th Cir. 2006). However, findings of disability by other agencies, while not binding on an ALJ,

9

are entitled to some weight and must be considered. <u>Morrison v. Apfel</u>, 146 F.3d 625, 628 (8th Cir. 1998)[2].

Here, the ALJ noted the V.A's determination, but contrasted it with the case at hand which encompassed a very narrow period, and found that during this relevant time, there was no documented treatment for plaintiff's alleged mental condition[3]. As such, I do not find that the ALJ's decision was dismissive of the V.A. determination, but rather, that the decision was fully considered, yet found to be somewhat irrelevant to the time period at bar. There is substantial evidence on this record as a whole to support the ALJ's findings as to the weight to be given to the opinion of Dr. Clark, and the V.A. determination.

Plaintiff also contends that the ALJ erroneously found that she could perform her past relevant work as an aircraft mechanic. Step four of the sequential analysis used in Social Security disability determinations requires the ALJ to review the plaintiff's RFC and the physical and mental demands of the plaintiff's past work. <u>Hedges v. Barnhart</u>, 269 F.Supp.2d 1048, 1052 (W.D.Ark. 2003); <u>see also</u>, 20 C.F.R. § 404.1520(e). As such, the ALJ has a duty to fully investigate and make explicit findings as to the physical and mental demands of plaintiff's past relevant work and to compare that with what the plaintiff herself is capable of doing before he determines that she is able

---

[2]A 1992 memorandum from the Social Security Administration's Chief Administrative Law Judge to the Office of Hearings and Appeals field personnel reminded "all ALJs and decision writers that even though another agency's determination that a claimant is disabled is not binding on SSA ..., the ALJ must evaluate it as any other piece of evidence, *and address it in the decision*." <u>Morrison</u>, 146 F.3d at 628.

[3]Retrospective diagnoses constitute relevant evidence concerning the degree of disability prior to the expiration of the insured period. <u>Meinders</u>, 195 F.Supp.2d at 1142. However, most of the medical evidence documenting plaintiff's treatment received after the date last insured reflects treatment for dental, sinus, and gynecological ailments. (Tr. 317-32).

10

to perform her past relevant work. Hedges, at 1052. These findings require evidence of the "actual functional demands and job duties of a particular past job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Id.; quoting, S.S.R. No. 82-61, Soc.Sec.Rep. 836, 838 (West 1983).

At the hearing the ALJ elicited the vocational expert's opinion as to several of plaintiff's past relevant jobs; however, the vocational expert hesitated when asked to provide the exertional and skill level of aircraft mechanic[4]. (Tr. 45-46). In answer to the ALJ's review of the testimony, the vocational expert agreed that the job of aircraft mechanic was of medium exertion, and skilled. (Tr. 47). The vocational expert also opined that the job required only a low level of interaction with supervisors and co-workers. (Tr. 48). When questioned by counsel, the vocational expert opined that if interactions with any group of people caused distress to plaintiff, then all work would be precluded (Tr. 51-52).

Based on the above, the ALJ posed a hypothetical question to the vocational expert that included the ability to perform medium and light work, no work with the public, and low contact with supervisors and co workers. The hypothetical posed sufficiently incorporated those limitations found by the ALJ to be credible based on the substantial evidence on the record as a whole, and included the physical, and more importantly, the mental limitations experienced by plaintiff. Cf., Vincent v. Apfel, 264 F.3d 767, 769 (8th Cir. 2001) (the ALJ failed to specifically set forth the claimant's physical and mental limitations and determine how those limitations affected claimant's RFC).

_____

[4]Although not conclusive, a reading of the testimony suggests that the vocational expert was not aware of this position, and, therefore, did not readily have an opinion to render. (Tr. 46).

11

I do acknowledge somewhat greater confidence in the substitute jobs–if medicated–than in the mechanic's work.[5]

Accordingly, it is hereby

ORDERED that plaintiff's motion for judgment is DENIED, and the decision of the Commissioner of Social Security is AFFIRMED. The clerk of the court is directed to enter judgment in favor of defendant.

HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

April 4, 2006

Kansas City, Missouri

---

[5]I also reiterate the limited supporting record plaintiff has for a disabling mental condition during the short window of opportunity between March 19 and June 30, 2001, when medication apparently alleviated further reported problems and the complaints made were minor physical ailments.